UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONALD BUZZARD, JR.,

                Plaintiff,

     v.

STATE OF WASHINGTON, et al.,

                Defendant.

Case No.  C20-01559-RAJ-SKV

REPORT AND RECOMMENDATION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action.  Plaintiff's amended complaint predominantly challenges the denial of his release to community custody on November 22, 2010, July 30, 2012, and May 23, 2014, and the conditions of his release to community custody established on June 16, 2016.  Dkt. 30.  Plaintiff also alleges violations of his rights to: access the courts and present a defense at his revocation hearing; to assist other inmates with legal work; to have access to counsel, and to due process and equal protection.  *Id.*  Plaintiff names as Defendants the following current or former members of the Indeterminate Sentence Review Board (ISRB): Douglas Carr[1], Jeff Patnode, Tom Sahlberg, Betsy Hollingsworth, Dennis Thaut, Lynne De Lano, K. Rongen, E. Balmert, T.

---

[1] The Court notes that the claims in Count III of the amended complaint, which included all claims against Defendant Carr, were previously dismissed without prejudice.  *See* Dkt. 39.

Davis, and Lori Ramsdell[2].  He also names the following Department of Corrections (DOC)

employees as Defendants: John Thompson (Law Librarian, Washington Corrections Center

(WCC)), Meek[3] (Sergeant (3A Unit), Monroe Correctional Complex (MCC)), Phillip Ahn

(Community Corrections Officer, Washington State Department of Corrections (DOC)), Lori

Wonders (Legal Liaison, Coyote Ridge Corrections Center (CRCC)), Andrewjeski[4] (Associate

Superintendent, CRCC), Howerton[5] (Officer, CRCC), and Kopoian[6] (Counselor (Unit 3A),

MCC).  Defendants Ahn, Andrewjeski, Balmert, Davis, Howerton, Kopoian, Meek, Patnode,

Ramsdell, Rongen, Thompson, and Wonders have filed a motion to dismiss for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6).[7]  Dkt. 60.  Plaintiff has filed a response to the motion

to dismiss and Defendants have filed a reply.  Dkts. 63 & 65.

    Having considered the parties' submissions, the balance of the record, and the governing

law, the undersigned recommends that Defendants' motion to dismiss, Dkt. 60, be GRANTED.

The undersigned recommends that the claims raised in Counts I and II of the amended complaint

against Defendants Patnode, Rongen, Balmert, Davis, Ramsdell and Ahn, be dismissed with

prejudice as barred by the statute of limitations.  The undersigned recommends that the claims

raised in Count IV of the amended complaint against Defendants Thompson, Meek, Wonders,

Andrewjeski, Howerton, and Kopoian, alleging violations of Plaintiff's rights to access the

courts and present a defense; to assist other inmates with legal work; to have access to counsel;

---

[2] Defendants identify Defendant Ramsdell's full name as Lori Ramsdell-Gilkey.  Dkt. 60.
[3] Defendants identify Defendant Meek's full name as Scott Meek.  Dkt. 60.
[4] Defendants identify Defendant Andrewjeski's full name as Melissa Andrewjeski.  Dkt. 60.
[5] Defendants identify Defendant Howerton's full name as Raymond Howerton.  Dkt. 60.
[6] Defendants identify Defendant Kopoian's full name as Catherine Kopoian.  Dkt. 60.
[7] The Court notes that service of the amended complaint has not been completed on Defendants Sahlberg, De Lano, Thaut and Hollingsworth.  In a notice dated November 30, 2021, the Attorney General's Office indicated that these Defendants were no longer employed by the ISRB or the State of Washington and, as such, the Attorney General's Office was unable to waive service on their behalf.  Dkt. 51.

and to due process and equal protection, be dismissed without prejudice as they fail to allege facts sufficient to state a claim.

The undersigned further recommends that Plaintiff's claims against the unserved Defendants Sahlberg, De Lano, Thaut, and Hollingsworth, raised in Count I of the amended complaint also be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e) as barred by the statute of limitations. The undersigned also alternatively recommends that the claims raised in Counts I and II of the amended complaint be dismissed against Defendants Patnode, Rongen, Balmert, Davis, Ramsdell, Ahn, Sahlberg, De Lano, Thaut, and Hollingsworth, pursuant to 28 U.S.C. §§ 1915A and 1915(e), as barred by quasi-judicial immunity. The undersigned recommends that to the extent Plaintiff's amended complaint can be construed to raise retaliation claims related to the ISRB's denial of Plaintiff's release on December 13, 2021 and related to Plaintiff's removal from the law library for providing legal assistance to other inmates, those claims should be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e). The undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that those claims be dismissed without prejudice. The undersigned recommends that the Clerk be directed to terminate Jay Inslee as a Defendant in this action. As no claims remain in this action the undersigned recommends that the case be closed.

BACKGROUND

In Count I of his amended complaint, Plaintiff alleges that he was improperly "denied parole release to community custody" on November 22, 2010, July 30, 2012, and May 23, 2014, due to his refusal to "waive [his] 1st and 5th Amendment rights to freedom to refrain from speaking, and refuse[al] to waive [his] 5th Amendment right against self-incrimination to attend

1    treatment." Dkt. 30 at 6-7. He also alleges these denials of release to community custody

2    constituted "retaliation", in violation of the First Amendment, because they were based on his

3    refusal to waive his First Amendment right to refrain from speaking and his Fifth Amendment

4    right against self-incrimination. *Id.* He alleges the denial of his release to community custody

5    violated his "state created liberty interest in release under the 5th and 14th Amendments, violated

6    [his] 5th Amendment rights against self-incrimination, and 1st Amendment right against freedom

7    to refrain from speaking, chilling [his] 1st Amendment rights, denied [him] that extra 6 years of

8    liberty interest in community custody[.]" *Id.* Plaintiff alleges Defendants Sahlberg, Thaut,

9    Hollingsworth, and De Lano, were the members of the ISRB who denied him release to

10   community custody, violating his constitutional rights, on November 22, 2010. *Id.* He alleges

11   Defendants Sahlberg, Rongen, De Lano, and Thaut, were the members of the ISRB who denied

12   him release to community custody, violating his constitutional rights, on July 30, 2012 and on

13   May 23, 2014. *Id.*

14         In Count II Plaintiff alleges that "from June 16, 2016 to present", he was denied his First,

15   Second, Fifth and Fourteenth Amendment rights when "unconstitutional community custody

16   conditions were imposed and enforced that were not crime-related under RCW 9.94A.030(10),

17   not law in effect date of offense under RCW 9.94A.345, and are unconstitutional as applied to

18   Plaintiff's conduct[.]" *Id.* at 10-11. Plaintiff lists the conditions he challenges as "travel

19   restrictions, computer restrictions, internet restrictions, social media restrictions, adult materials

20   restrictions or sexually explicit materials, polygraphs forced for monitoring purposes, forced

21   treatment, alcohol restrictions, and firearm restrictions[.]" *Id.* Plaintiff alleges Defendants ISRB

22   members Patnode, Rongen, Balmert, Davis, Ramsdell, and community custody officer Phillip

23   Ahn, violated his constitutional rights in imposing these restrictions. *Id.*

In Count IV Plaintiff alleges between July 28, 2020 and present he was denied his "1st 5th, 6th, and 14th Amendment rights to access the law library, access to courts, contact his attorney(s), present a defense for his revocation hearing on August 26, 2020, notary, legal copies, legal envelopes which he needed to litigate his appeals, and present a defense for his revocation hearing." *Id.* at 12-14.  Plaintiff alleges between July 28, 2020 and approximately September 9, 2020, Defendant Meek denied Plaintiff access to the law library, legal envelopes, legal photocopies, and access to the courts.  *Id.*  Plaintiff alleges this prevented him from preparing a defense for his revocation hearing.  *Id.*  Plaintiff alleges he asked Defendant Meek and Defendant Kopoian every day for legal forms, documents, and envelopes to prepare for his revocation hearing but that he was not given library access for this purpose.  *Id.*  He alleges Defendants' actions also constituted "negligence" under Washington state law.  *Id.*  Plaintiff also alleges Defendants Meek and Kopoian failed to ensure he had access to contact his attorney(s). *Id.*  Plaintiff alleges between September 9, 2020 and November 7, 2020, Defendant Thompson denied him access to the law library.  *Id.*  Plaintiff alleges between November 7, 2020, to present, Defendant Wonders denied him access to the courts, the law library, and photocopies.  *Id.*

Plaintiff alleges on December 11, 2020, Defendant Andrewjeski denied Plaintiff his First Amendment rights and violated DOC Policy 590.500 when she told him he was not permitted to assist other inmates or talk to them about their legal cases.  *Id.*  He alleges on or about December 15, 2020, Defendant Howerton told him to be quiet in the law library and that he was not allowed to assist other inmates.  *Id.*

As relief Plaintiff requests $53,000,000.00 in total.  *Id.* at 15.  He asks that he be awarded general and specific damages against Defendants for Defendants' negligence, statutory

1    attorney's fees, costs, and disbursements, and interest, and "other relief as the Court deems[.]"

2    *Id.*

3    <u>DISCUSSION</u>

4    A motion to dismiss can be granted only if a plaintiff's complaint, with all factual

5    allegations accepted as true, fails to "raise a right to relief above the speculative level[.]" *Bell*

6    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

7    > To survive a motion to dismiss, a complaint must contain sufficient
8    > factual matter, accepted as true, to "state a claim to relief that is
9    > plausible on its face." A claim has facial plausibility when the
         plaintiff pleads factual content that allows the court to draw the
         reasonable inference that the defendant is liable for the misconduct
         alleged. The plausibility standard is not akin to a probability
10   > requirement, but it asks for more than a sheer possibility that a
         defendant has acted unlawfully.

11   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

12   A complaint must contain a "short and plain statement of the claim showing that the

13   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

14   statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

15   which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

16   However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

17   accusation." *Iqbal*, 556 U.S. at 678.

18   While the Court must accept all the allegations contained in the complaint as true, the

19   Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

20   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

22   (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

23   state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

REPORT AND RECOMMENDATION - 6

Case 2:20-cv-01559-RAJ    Document 68    Filed 04/21/22    Page 7 of 25


is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

A.    *Counts I and II – Statute of Limitations*

In their motion to dismiss, Defendants assert Plaintiff's allegations in Counts I and II, that he was improperly denied release to community custody by the ISRB on November 22, 2010, July 30, 2012, and May 23, 2014, and that the conditions of his community custody as determined by the ISRB on June 16, 2016, violate his constitutional rights, are barred by the statute of limitations. *See* Dkt. 60.

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Tahoe-Sierra Pres.*

*Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may

raise the defense of statute of limitations *sua sponte*), *overruled on other grounds by Gonzalez v.*

*Arizona*, 677 F.3d 383, 389 (9th Cir. 2011) (en banc).

A complaint must be timely filed.  The Civil Rights Act, 42 U.S.C. § 1983, contains no

statute of limitations.  "Thus, the federal courts [ ] apply the applicable period of limitations

under state law for the jurisdiction in which the claim arose."  *Rose v. Rinaldi*, 654 F.2d 546, 547

(9th Cir. 1981).  In *Rose*, the Ninth Circuit determined the three-year limitations period identified

in Revised Code of Washington 4.16.080(2) is the applicable statute of limitations for § 1983

cases in Washington.  654 F.2d at 547; *see* RCW 4.16.080(2).

The Court also applies the forum state's law regarding equitable tolling for actions

arising under § 1983.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  In Washington,

courts permit equitable tolling "when justice requires."  *Millay v. Cam*, 135 Wn.2d 193, 206

(1998).  "The predicates for equitable tolling are bad faith, deception, or false assurances by the

defendant and the exercise of diligence by the plaintiff."  *Id.*  Courts "typically permit equitable

tolling to occur only sparingly, and should not extend it to a garden variety claim of excusable

neglect."  *State v. Robinson*, 104 Wn. App. 657, 667 (2001) (internal quotations omitted).

Plaintiff alleges Defendants Sahlberg, Rongen, De Lano, Thaut, and Hollingsworth

improperly denied him release to community custody in one or more of the three ISRB hearings

held on November 22, 2010, July 30, 2012, and May 23, 2014.  He alleges Defendants ISRB

members Patnode, Rongen, Balmert, Davis, Ramsdell, and community custody officer

Defendant Ahn, imposed unconstitutional conditions of his release to community custody on

June 16, 2016.  Plaintiff had actual notice of the facts relating to these claims on November 22,

2010, July 30, 2012, May 23, 2014, and June 16, 2016.  *See Kimes v. Stone*, 84 F.3d 1121, 1128

(9th Cir. 1996) (a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action). The time for filing a complaint regarding these claims therefore expired three years after Plaintiff had notice of the alleged constitutional violation, on November 22, 2013, July 30, 2015, May 23, 2017, and June 16, 2019. Plaintiff signed--effectively filing-- this complaint on October 22, 2020, over a year after the statute of limitations ran on his most recent claim, and several years after the statute of limitations ran with respect to his older claims. Thus, Plaintiff failed to file a timely complaint with respect to the claims relating to the November 22, 2010, July 30, 2012, and May 23, 2014, ISRB decisions denying his release on community custody, and the June 16, 2016, conditions imposed on his release to community custody.

Plaintiff has also failed to plead facts to support equitable tolling of these claims in his amended complaint. In his response to Defendants' motion to dismiss, Plaintiff argues that he is entitled to equitable tolling because his claims are "capable of repetition yet evading review." Dkt. 63. The Court is not persuaded by this argument. Plaintiff cites to *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013) in support of his argument. But *Shell* addressed the mootness doctrine in the context of a challenge to a motion for preliminary injunction where the preliminary injunction had expired naturally before the Ninth Circuit had the opportunity to address the appeal. 709 F.3d 1281. The Ninth Circuit determined the claim fell within an exception to the mootness doctrine, and could be considered, because it was "capable of repetition yet evading review."[8] *Id.*

---

[8] In *Shell*, the Ninth Circuit reasoned that:
> A preliminary injunction limited to a single Arctic Ocean open water season, that bars Greenpeace USA from physically interfering with Shell's Arctic drilling operation, will never last long enough to allow full litigation because of the inherently limited duration of the open water season and, correspondingly, the drilling season.

1    Here, Defendants do not argue Plaintiff's claims are moot but instead that they are barred

2    by the statute of limitations. Plaintiff has failed to plead any facts which, if proved, would

3    support any plausible claim of equitable tolling. *Cervantes v. City of San Diego*, 5 F.3d 1273,

4    1277 (9th Cir. 1993); *Iqbal*, 556 U.S. at 679. Plaintiff cites no case law indicating that equitable

5    tolling of the statute of limitations for his § 1983 action against ISRB members and his

6    community custody officer, would be appropriate based on the exception to the mootness

7    doctrine discussed in *Shell*. *Id.* Plaintiff also pleads no facts to indicate the alleged violations,

8    for which his complaint only specifically requests monetary relief in this § 1983 action, "are

9    capable of repetition yet evading review." *Id.* Plaintiff offers no reasonable explanation for why

10   his claims could not have been fully reviewed and decided on the merits if filed within the statute

11   of limitations.

12       Plaintiff also argues in his response to Defendants' motion that his claims are timely

13   under the "continuing violations doctrine." Dkt. 63. The continuing violation doctrine applies

14   to § 1983 actions and may allow a plaintiff to seek relief for events outside of the limitations

15   period. *See Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997); *Williams v.*

16   *Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982). But a "[m]ere 'continuing *impact* from

17   past violations is not actionable.'" *Grimes v. City and County of San Francisco*, 951 F.2d 236,

18   238–39 (9th Cir. 1991) (quoting *Williams*, 665 F.2d at 924; *Abramson v. University of*

19   *Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the

20

21
    _____

22       […]
         Shell has drilling rights under a multi-year lease, and there is no reason to believe that
         Greenpeace USA's "stop Shell" campaign was limited to the 2012 drilling season. We

23       conclude that there is at minimum a "reasonable expectation that the same complaining
         party [will] be subject to the same action again."
     *Shell*, 709 F.3d at 1288 (internal citations omitted).

1   discriminatory acts, not upon the time at which the consequences of the acts became most

2   painful.").

3          Here, Plaintiff's causes of action accrued when the ISRB rendered its decisions denying

4   him release and setting the conditions of his community custody.  The continuing violation

5   doctrine is inapplicable because Plaintiff fails to establish a new violation occurs each time the

6   allegedly unconstitutional conditions are enforced.  *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th

7   Cir. 2001) (Holding Plaintiff's § 1983 cause of action accrued when she received a letter

8   permanently suspending her legal visitation and correspondence privileges at all correctional

9   facilities and with all inmates; continuing violation doctrine was inapplicable because Plaintiff

10  failed to establish a new violation occurred each time she was denied visitation or mail

11  privileges, rather the subsequent denials of privileges were "merely the continuing effect of the

12  original suspension."); *Smith v. Rawson*, No. C19-00053, 2021 WL 1220617, at *10 (D. Idaho

13  Mar. 31, 2021) (Holding the continuing violation doctrine inapplicable and Plaintiff's § 1983

14  claims barred by the statute of limitations and stating "[n]o new act occurred, and no new

15  limitation period began, each and every time one of the Defendants enforced the sentencing

16  terms imposed by [the sentencing judge] in 2010; imposed additional supervision conditions

17  pursuant to the same; or disciplined Plaintiff for violating them. Plaintiff has simply pled

18  continuing 'ill effects' resulting from being classified as a sex offender during his incarceration

19  and later parole, having to undergo sex offender treatment, and take a full disclosure polygraph

20  test, which requirements were imposed pursuant to [the sentencing judge's] sentence.").

21         Plaintiff fails to allege facts to indicate bad faith, deception, or false assurances by the

22  Defendants, or to demonstrate diligence on his own part in pursuing these claims.  As Plaintiff

23  did not initiate this lawsuit until more than three years after he had notice of these claims, and as

1    he has not shown he is entitled to equitable tolling, these claims are barred by the statute of

2    limitations.[9]   Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants

3    Patnode, Rongen, Balmert, Davis, Ramsdell and Ahn, should be granted and these claims should

4    be dismissed as barred by the statute of limitations.

5        Plaintiff's claims against the unserved Defendants Sahlberg, De Lano, Thaut, and

6    Hollingsworth, in Count I should also be dismissed pursuant to 28 U.S.C. §§ 1915A and 1915(e).

7    Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any

8    portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from

9    defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en

10   banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.

11   2010) (discussing 28 U.S.C. § 1915A(b)).  As the running of the statute of limitations is apparent

12   from the face of the amended complaint, and the amended complaint pleads no facts which

13   would support a plausible claim for equitable tolling, Plaintiff's claims against these Defendants

14   should also be dismissed for failure to state a claim.  *See Hughes v. Lott*, 350 F.3d 1157, 1163

15   (11th Cir. 2003) (upholding *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's

16   time-barred complaint); *Florence v. Benrostrol*, No. C19- 0446, 2019 WL 3068226, at *2-3

17

18   [9] The Court also observes that it appears several of the issues Plaintiff raises in Counts I and II have been
19   previously addressed and dismissed by this Court in prior actions.  Specifically, it appears Plaintiff's
     challenges to the November 22, 2010, July 30, 2012, and May 23, 2014 denials of release by ISRB
20   members Delano, Sahlberg, Thaut, and Hollingsworth, on First and Fifth Amendment and retaliation
     grounds, were previously addressed and dismissed with prejudice by this Court in 2016.  *See Buzzard v.
     ISRB/CCB*, No. C15-5874 RBL-KLS, 2016 WL 1237874, at *1 (W.D. Wash. Mar. 10, 2016), *report and
21   recommendation adopted*, 2016 WL 1221671 (W.D. Wash. Mar. 29, 2016) (dismissing claims against
     ISRB members based on quasi-judicial immunity).  Thus, Plaintiff's same claims here appear to be
22   duplicative of issues previously decided.  It also appears that Plaintiff's claims challenging the conditions
     of his community custody related to internet/computer access and possession of sexually explicit
23   materials set by the ISRB on June 16, 2016, have also been addressed by this Court in the context of a
     habeas petition.  *See Buzzard v. Uttecht*, No. C21-1061-JCC-JRC, 2022 WL 1129639, at *1 (W.D. Wash.
     Mar. 25, 2022), *report and recommendation adopted*, 2022 WL 1127485 (W.D. Wash. Apr. 15, 2022)
     (denying habeas petition and dismissing these claims with prejudice).

1   (S.D. Cal. July 12, 2019) (dismissing time-barred complaint for failure to state a claim prior to

2   service pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)).

3   B.    *Counts I and II – Quasi-Judicial Immunity*

4          Plaintiff's claims in Counts I and II should also be dismissed pursuant to 28 U.S.C. §§

5   1915A and 1915(e) as the ISRB member Defendants (Sahlberg, De Lano, Thaut, Hollingsworth,

6   Patnode, Rongen, Balmert, Davis, and Ramsdell) and the community custody officer Defendant

7   (Ahn) are entitled to absolute immunity from Plaintiff's claims for damages.

8          The Ninth Circuit has held that parole board officials are entitled to absolute immunity

9   from suits by prisoners for actions taken when processing and deciding parole applications.

10  *Sellars v. Case Procunier*, 641 F.2d 1295, 1302 (9th Cir. 1981); *see also Brown v. Cal. Dep't of*

11  *Corr.*, 554 F.3d 747, 751 (9th Cir. 2009) ("[P]arole board members are entitled to absolute

12  immunity for parole board decisions."). Absolute immunity also applies to "parole officials for

13  the 'imposition of parole conditions' and the 'execution of parole revocation procedures,' tasks

14  integrally related to an official's decision to grant or revoke parole." *Swift v. California*, 384

15  F.3d 1184, 1189 (9th Cir. 2004) (quoting *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)).

16  This immunity applies even where parole officers "impos[e] allegedly unconstitutional parole

17  conditions." *Thornton v. Brown*, 757 F.3d 834, 839–40 (9th Cir. 2013).

18         Plaintiff claims the individual ISRB member Defendants Sahlberg, Thaut, Hollingsworth,

19  De Lano and Rongen, improperly denied release and the individual ISRB member Defendants

20  Patnode, Rongen, Balmert, Davis, and Ramsdell, and community custody officer Defendant

21  Ahn, imposed unconstitutional community custody conditions.[10] However, these Defendants are

22

23  _____

[10] The Court notes that Plaintiff does not allege in these claims that the community custody officer,
Defendant Ahn, violated his constitutional rights by enforcing the community custody conditions in an
unconstitutional or arbitrary manner, but only that he imposed the established (allegedly unconstitutional)

immune from suit because they were acting in their judicial capacity in denying Plaintiff's

release and in imposing community custody conditions.  Therefore, Plaintiff's claims for

damages against Defendants Sahlberg, Thaut, Hollingsworth, De Lano, Patnode, Rongen,

Balmert, Davis, Ramsdell, and Ahn, should be dismissed pursuant to 28 U.S.C. §§ 1915A and

1915(e).  *See Buzzard*, 2016 WL 1237874, at *3 (dismissing claims against ISRB board

members based on quasi-judicial immunity).[11]

C.    *Count IV - Access to Courts, Access to Counsel, Legal Advice to Other Inmates, Due Process, Equal Protection*

1.    *Access to Courts*

Inmates have a "fundamental constitutional right of access to the courts."  *Bounds v.*

*Smith*, 430 U.S. 817, 828 (1977).  In *Bounds*, the Supreme Court held the right of access requires

prison officials to assist inmates in preparing and filing legal papers, either by establishing an

adequate law library or by providing adequate assistance from persons trained in the law.  *Id.* at

828.  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held a prisoner must show

some actual injury resulting from a denial of access in order to allege a constitutional violation.

*Id*. at 349.

To establish he suffered an actual injury, a plaintiff must show "actual prejudice with

respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

---

community custody conditions upon Plaintiff.  *See Thornton*, 757 F.3d at 839–40 ("Absolute immunity does bar Plaintiff's claims for damages against his parole officers for imposing allegedly unconstitutional parole conditions. […] Absolute immunity does not extend, though, to Plaintiff's claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner.").  Plaintiff's claims, as pled, challenge the community custody conditions themselves, not any specific allegedly improper enforcement of those conditions.

[11] The Court notes that Plaintiff's amended complaint contains no requests for any specific injunctive or equitable relief with respect to these claims and, as such, with the dismissal of Plaintiff's claims for damages, it appears no viable claims would remain with respect to the claims raised in Counts I and II.

REPORT AND RECOMMENDATION - 14

present a claim." *Lewis*, 518 U.S. at 348; *Christopher v. Harbury*, 536 U.S. 403, 415, (2002); *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and Section 1983 cases. *See Lewis*, 518 U.S. at 353 n. 3, 354-55. "Failure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to [an access to courts] claim." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (quoting *Lewis*, 518 U.S. at 353 & n. 4).

Plaintiff makes several general assertions that Defendants Thompson, Meek, Kopoian and Wonders interfered with his access to the courts by denying him access the law library and/or failing to provide him with legal envelopes, legal copies, and notary services. *See* Dkt. 30. Plaintiff appears to assert that, due to Defendants' actions, he was unable to adequately prepare a defense for his community custody revocation hearing on August 26, 2021. But Plaintiff fails to allege adequate facts showing how the alleged inadequate law library access or denial of legal envelopes, legal copies, and notary services, resulted in the revocation of his community custody, frustrated a nonfrivolous legal claim, or caused him other actual injury.

The Court notes that "[i]nmates have a constitutional right to either assistance of a lawyer, or access to the law library." *See Keenan v. Hall*, 83 F.3d 1083, 1093-94 (9th Cir. 1996). Plaintiff's pleadings make clear that he had counsel for his revocation hearing. *See* Dkt. 63 at 4. Thus, it does not appear he had any separate constitutional right to access the law library to prepare for this hearing, nor does Plaintiff identify additional legal research he would have needed to conduct himself, given that he had counsel, in order to prepare for the hearing. Even if Plaintiff did not have counsel, Plaintiff fails to identify any specific information from the law library he needed to prepare for his hearing or that would have affected the outcome of his revocation hearing, nor does he explain how the denial of legal envelopes legal copies, or notary

1  services, resulted in the revocation of his community custody, frustrated any other non-frivolous

2  legal claim, or caused him other actual injury.  *See, e.g., Garcia v. Los Angeles Cty.*, No. C20-

3  08528, 2021 WL 5404772, at *10 (C.D. Cal. Nov. 3, 2021) ("Plaintiff has not stated

4  a § 1983 claim for failure to provide supplies because he has not shown that without the supplies,

5  he lacked meaningful access to the courts. He has not shown any injury in his ability to litigate

6  this or any other lawsuit as a result of the [jail's] actions regarding supplies.") *report and*

7  *recommendation adopted sub nom.*, 2021 WL 5396096 (C.D. Cal. Nov. 18, 2021), *appeal*

8  *dismissed sub nom.*, No. C21-56335, 2022 WL 726952 (9th Cir. Jan. 21, 2022); *Longhi v.*

9  *Buffington*, No. C93-4096, 1994 WL 72208, at *2 (N.D. Cal. Feb. 28, 1994) ("Although plaintiff

10  alleges that defendants […] refused to provide envelopes, plaintiff has made no showing of

11  actual injury.").

12      In sum, Plaintiff fails to plead facts which raise his claim of denial of access to the courts

13  above the speculative level.  The amended complaint does not provide sufficient detail to

14  establish any actual injury.  Rather, Plaintiff provides only vague, conclusory statements alleging

15  he has been harmed by Defendants.  Accordingly, Defendants' motion to dismiss should be

16  granted and Plaintiff's claim alleging denial of access to courts should be dismissed without

17  prejudice.

18      *2.    Access to Counsel*

19      Plaintiff also alleges generally that Defendants Meek and Kopoian "failed to ensure" he

20  "had access to contact his attorney(s)."  Dkt. 30.

21      "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall

22  enjoy the right ... to have the Assistance of Counsel for his defen[s]e.'"  *Nordstrom v. Ryan*

23  (*Nordstrom I*), 762 F.3d 903, 909 (9th Cir. 2014) (quoting U.S. Const. amend. VI).  Deliberate

government interference with the confidential relationship between a criminal defendant and defense counsel violates the Sixth Amendment right to counsel "if it substantially prejudices the criminal defendant." *Nordstrom I*, 762 F.3d at 909.  Furthermore, the right of access to courts includes the right of visitation with counsel. *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). But this right of access is not absolute and must be balanced against the legitimate governmental interest in maintaining the security and safety of the prison facilities. *See Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) *overruled on other grounds by Lewis*, 518 U.S. at 350; *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

Here, Plaintiff provides no specific factual allegations regarding when or how Defendants Meek and Kopoian "failed to ensure" he "had access to contact his attorney(s)."  Nor does Plaintiff allege any specific facts to indicate he was prejudiced, or suffered harm, as a result of Defendants' actions.  Plaintiff's conclusory allegations regarding lack of access to his attorney are insufficient to state a claim.  Accordingly, Defendants' motion to dismiss should be granted and Plaintiff's claim alleging lack of access to his attorney should be dismissed without prejudice.

### 3.    *Due Process and Equal Protection*

Plaintiff also generally references the Fifth and Fourteenth Amendment in his amended complaint.

The Fourteenth Amendment Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law."  There are two possible forms of a Fourteenth Amendment due process claim: substantive and procedural.  To state a substantive due process claim, plaintiff must allege "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir.

2008).  To state a claim for violation of procedural due process, plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.  *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003).

"To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotations omitted).  Alternatively, when an action does not implicate a protected class such a race or religion, a plaintiff may establish a "class of one" equal protection claim by alleging that he has been intentionally treated differently from others similarly situated without any rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  To "'be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects.'"  *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)).

To the extent Plaintiff intends to allege violation of his rights to due process or equal protection, he provides no argument or factual allegations explaining the basis for or supporting such claims.  Accordingly, Defendants' motion to dismiss should be granted and Plaintiff's claim alleging violation of his rights to due process and equal protection should be dismissed without prejudice.

### 4.    *Legal Advice to Other Inmates*

Plaintiff alleges on December 11, 2020, Defendant Andrewjeski violated Plaintiff's First Amendment rights and DOC Policy 590.500 when she told him he was not permitted to assist

1   other inmates or talk to them about their legal cases.  He alleges on or about December 15, 2020,

2   Defendant Howerton told him to be quiet in the law library and that he was not allowed to assist

3   other inmates.

4          A prisoner's legal assistance to other inmates deserves no more First Amendment

5   protection than any other prisoner speech.  *See Shaw v. Murphy*, 532 U.S. 223, 231–32 (2001).

6   "[A] prison inmate retains those First Amendment rights that are not inconsistent with [their]

7   status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*

8   *v. Procunier*, 417 U.S. 817, 822 (1974).  A regulation that impinges on First Amendment rights

9   "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.

10  78, 89 (1987).  In determining whether a prison regulation is reasonably related to a legitimate

11  penological interest, the court should consider the following factors: (1) whether there is a valid,

12  rational connection between the regulation and the interest used to justify the regulation; (2)

13  whether prisoners retain alternative means of exercising the right at issue; (3) the impact the

14  requested accommodation will have on inmates, prison staff, and prison resources generally; and

15  (4) whether there are ready alternatives to the regulation which could be implemented.  *See*

16  *Beard v. Banks*, 548 U.S. 521, 529 (2006).  Legitimate penological interests include "the

17  preservation of internal order and discipline, the maintenance of institutional security against

18  escape or unauthorized entry, and the rehabilitation of the prisoners." *Procunier v. Martinez*,

19  416 U.S. 396, 412 (1974) (footnote omitted) *limited by Thornburgh v. Abbott*, 490 U.S. 401

20  (1989); *Beard*, 548 U.S. at 530–31 (motivating better behavior on the part of particularly

21  difficult prisoners); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (protecting guards and

22  preventing prisoners from sexually harassing guards).  "[F]reedom of association is among the

23  rights least compatible with incarceration." *See Overton v. Bazzetta*, 539 U.S. 126, 131–32

1   (2003) (holding that prison officials' restrictions on noncontact visits bore a rational relation to

2   legitimate penological interests).

3           Plaintiff appears to allege Defendants' actions violated his constitutional right to provide

4   legal assistance to other inmates.  But a prisoner does not have a separate free standing

5   constitutional right to provide legal assistance to other inmates.  Rather, a prisoner's legal

6   assistance to other inmates deserves no more First Amendment protection than any other

7   prisoner speech.  *See Shaw*, 532 U.S. at 231–32.  Here, Plaintiff fails to allege or provide any

8   facts demonstrating how the statements by Defendant Andrewjeski and Howerton, that he must

9   be quiet in the law library and that he was not permitted to assist other inmates or talk to them

10  about their legal cases, were unrelated to any legitimate penological interest.  *See, e.g., Edwards*

11  *on behalf of J.E. v. Yamhill Cty.*, No. C19- 00240, 2021 WL 7540367, at *8 (D. Or. Sept. 7,

12  2021), *report and recommendation adopted*, 2022 WL 819449 (D. Or. Mar. 17, 2022) (Granting

13  Defendants' motion to dismiss Plaintiffs' First Amendment challenge to regulations on various

14  restrictions, including restrictions on journal writing, stating "Plaintiffs continue to fail to allege

15  any facts demonstrating how the rules are unrelated to any penological interest[.]).

16          Thus, Plaintiff fails to allege sufficient facts to state a claim.  Accordingly, Defendants'

17  motion to dismiss should be granted and Plaintiff's claim alleging denial of his First Amendment

18  right to provide legal advice to other inmates should be dismissed without prejudice.

19  *D.    Retaliation*

20          In his response to Defendants' motion to dismiss, Plaintiff alleges he was subjected to

21  retaliatory behavior due to his litigation activities and for providing legal assistance to other

22  inmates.  Dkt. 63 at 3-4.  Specifically, Plaintiff alleges the ISRB retaliated against him in

23  December 2021 when it declined to release him.  *Id.*  Plaintiff also alleges, in his response to the

1    motion, that Defendant Andrewjeski and Defendant Howerton retaliated against him by "kicking

2    [him] out" of the law library for talking and assisting other inmates. *Id.* Plaintiff does not appear

3    to have raised these specific claims in his amended complaint. *See* Dkt. 30. However, even if

4    these claims were properly before the Court, his allegations fail to state a claim.

5        The First Amendment protects prisoners' right to file grievances and pursue civil rights

6    litigation in federal court without retaliation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.

7    2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a

8    viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

9    state actor took some adverse action against an inmate (2) because of (3) that prisoner's

10   protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

11   rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*,

12   408 F.3d at 567-68.

13       "The prisoner must show that the type of activity in which he was engaged was

14   constitutionally protected, that the protected conduct was a substantial or motivating factor for

15   the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological

16   interest." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) (citing *Hines v. Gomez*,

17   108 F.3d 265, 267-68 (9th Cir. 1997)); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

18   1995) (plaintiff bears burden of pleading and proving the absence of legitimate correctional goals

19   for the conduct of which he complains). "[M]ere speculation that defendants acted out of

20   retaliation is insufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Retaliation claims

21   brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement

22   in day-to-day prison management, which 'often squander[s] judicial resources with little

23   offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 806 (quoting *Sandin v. Conner*, 515 U.S. 472,

1   482 (1995)).  In particular, courts should "'afford appropriate deference and flexibility' to prison

2   officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be

3   retaliatory."  *Id.* (quoting *Sandin*, 515 U.S. at 482).

4        Plaintiff alleges in his response to the motion that the ISRB "acted in retaliation for this

5   lawsuit" and denied him release in December 2021.  But the record shows that the ISRB

6   provided the following reasons for denying Plaintiff's release: "statistical estimate of risk,

7   criminal history, release history, ability to control behavior, responsivity to programming,

8   demonstrated offender change, release planning, discordant information, and case specific

9   factors."  Dkt. 63, Ex. 2 at 3.  Thus, the record currently before the Court reflects that the denial

10  of Plaintiff's release was intended to advance a legitimate penological goal, and Plaintiff fails to

11  allege sufficient facts to indicate that the filing of this lawsuit was a substantial or motivating

12  factor in the denial of his release.

13       Plaintiff also alleges Defendants retaliated against him by removing him from the library

14  because he was assisting other inmates with legal work.  But again, Plaintiff fails to allege or

15  provide any facts to indicate that Defendants' actions did not advance a legitimate penological

16  goal.

17       Accordingly, Plaintiff has failed to state a retaliation claim and, to the extent these claims

18  can be construed to have been raised in the amended complaint, they should be dismissed

19  without prejudice pursuant to 28 U.S.C.§ § 1915A and 1915(e).

20  E.    *State Law Negligence Claim*

21       Plaintiff also appears to allege Defendants Meek and Kapoian were "negligent" under

22  Washington State Law in failing to provide him access to the law library and other legal

23  materials.  Dkt. 30 at 12-14

1    Federal courts have supplemental jurisdiction to consider state-law claims when they are

2    "so related" to the federal claims that they "form part of the same case or controversy[.]"  28

3    U.S.C. § 1367(a).  The exercise of supplemental jurisdiction is designed to promote "judicial

4    economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

5    350 (1988).  However, when all federal claims have been dismissed, the interests promoted by

6    supplemental jurisdiction are no longer present, and a court may decline to exercise jurisdiction

7    over state-law claims.  28 U.S.C. § 1367(c); *Carnegie-Mellon*, 484 U.S. at 350 n.7 ("[I]n the

8    usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

9    considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

10   and comity—will point toward declining to exercise jurisdiction over the remaining state-law

11   claims.").

12    Here, as the undersigned is recommending dismissal of all of Plaintiff's federal-law

13   claims, the undersigned also recommends that the Court decline to exercise supplemental

14   jurisdiction over Plaintiff's state law claims and that those claims be dismissed without

15   prejudice.

16   *F.    Jay Inslee*

17    The Court also notes that Plaintiff does not name Jay Inslee in his amended complaint

18   although he remains listed as a Defendant on the docket.  *See* Dkt. 30.  Accordingly, the Court

19   recommends that the Clerk be directed to terminate Jay Inslee as a Defendant in this action.

20   *G.    Leave to Amend*

21    The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must

22   have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they

23   cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

REPORT AND RECOMMENDATION - 23

1    Here, Plaintiff was previously allowed to amend his complaint and as discussed above, his

2    amended complaint still fails to state a claim.  Accordingly, the Court recommends Plaintiff not

3    be given additional leave to amend.  *See Fid. Fin. Corp. v. Fed. Home Loan Bank of San*

4    *Francisco,* 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to

5    amend is particularly broad where the court has already given the plaintiff an opportunity to

6    amend his complaint.").

7                                              <u>CONCLUSION</u>

8           The Court recommends Defendants' motion to dismiss (Dkt. 60) be GRANTED.  The

9    undersigned recommends that the claims raised in Counts I and II of the amended complaint

10   against Defendants Patnode, Rongen, Balmert, Davis, Ramsdell and Ahn, be dismissed with

11   prejudice as barred by the statute of limitations.  The undersigned recommends that the claims

12   raised in Count IV of the amended complaint against Defendants Thompson, Meek, Wonders,

13   Andrewjeski, Howerton, and Kopoian, alleging violation of Plaintiff's right to access the courts

14   and present a defense, his right to assist other inmates with legal work, his right to have access to

15   counsel, and his right to due process and equal protection, be dismissed without prejudice as they

16   fail to allege facts sufficient to state a claim.

17          The undersigned further recommends that Plaintiff's claims against the unserved

18   Defendants Sahlberg, De Lano, Thaut, and Hollingsworth, raised in Count I of the amended

19   complaint also be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e) as

20   barred by the statute of limitations.  The undersigned also alternatively recommends that the

21   claims raised in Counts I and II of the amended complaint be dismissed against Defendants

22   Patnode, Rongen, Balmert, Davis, Ramsdell, Ahn, Sahlberg, De Lano, Thaut, and Hollingsworth,

23   pursuant to 28 U.S.C. §§ 1915A and 1915(e), as barred by quasi-judicial immunity.  The

undersigned recommends that to the extent Plaintiff's amended complaint can be construed to raise retaliation claims related to the ISRB's denial of Plaintiff's release on December 13, 2021 and related to Plaintiff's removal from the law library for providing legal assistance to other inmates, those claims should be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e).  The undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that those claims be dismissed without prejudice.  The undersigned recommends that the Clerk be directed to terminate Jay Inslee as a Defendant in this action.  As no claims remain in this action the undersigned recommends that the case be closed.

A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 13, 2022**.

Dated this 21st day of April, 2022.

S. KATE VAUGHAN
United States Magistrate Judge